CALVER ex rel. CHIN TIN TUEY v. WARD, Com'r of Immigration.

Misc. Civ. No. 6099.

District Court, D. Massachusetts.

May 6, 1941.

John J. O'Neill and James H. Brennan, both of Boston, Mass., for petitioner.

Edmund J. Brandon, U. S. Atty., and William J. Koen, Sp. Asst. to U. S. Atty., both of Boston, Mass., for defendant.

BREWSTER, District Judge.

This petition for a writ of habeas corpus was brought on behalf of Chin Tin Tuey who, in 1939, sought admission into the United States as a son of Chin Bark Hee, a citizen whose citizenship is conceded.

Chin Tin Tuey claims that he was born February 28, 1922 in China. In a previous examination both his father and mother have mentioned a son whose name and age correspond with those of the applicant. The Board of Special Inquiry, however, was not satisfied that he was this son and excluded him.

There was little in the record to warrant the decision except that the applicant had the appearance of a boy between 12 and 14 years of age rather than a young man of 17 years of age. In order to prove that he is a son of Chin Bark Hee, as claimed, it was necessary to satisfy the Board that he was born prior to June, 1923, when the father and mother came to the United States, where they remained until their deaths.

The height, weight, dental and other physical developments were obviously not those of a young man of 17 years of age. The Board of Special Inquiry caused him to be examined by Dr. Maguire of the Public Health Service, and caused X-rays to be taken. As a result of both the examination and the X-rays, the Doctor expressed the opinion that Chin Tin Tuey was between 12 and 14 years of age and not older.

The Board also received the testimony of two specialists who had examined the boy, and both agreed that his apparent physiological age was less than his chronological age. They saw indications which led them to believe that this disparity was due to glandular disturbance or pituitary infantilism. It was thought that this question could be determined if the boy was subjected to treatment for the suspected ailment, and he was allowed to enter for that purpose.

In February, 1941 a further hearing was accorded this applicant for the purpose of receiving additional testimony bearing upon the question of his age. It appeared that he had been given treatment from September, 1939 to June, 1940. During this period he had gained four and three-fourths inches in height and nineteen and one-half pounds in weight. From June, 1940 when treatment was discontinued, to February, 1941 he continued to gain, adding one and three-fourths inches to his height and ten pounds to his weight. From the table of average growth of boys from 12 to 14 or from 14 to 16 years of age, submitted by the applicant's expert witness, it appears that the increased height and weight were somewhat more than would be expected of the average normal youth passing from boyhood into the stage of adolescence. It also appears that between 17 and 19 no such increase was to be expected. There was evidence tending to show that the continued gain in height and weight after the treatment had been discontinued indicated that it was not due to the treatment.

Just before the hearing in February, 1941 the boy was again examined by Dr. Maguire, and X-rays taken. These again showed the boy to be not over 16 years of age, and Dr. Maguire was of the opinion that the results shown were consistent with the normal growth and development of one of 14 years of age in 1939 rather than of one of 17 years of age on that date.

It is quite apparent that the delay of two years and the treatment which the Chinese boy received have not solved the question of his age. If he was 17 in 1939, then he was suffering from glandular disturbance which retarded his development. If, on the other hand, he was 14 years of age, the development was what would be expected. The doctors all agreed that the treatment would not accelerate the development in a normal person.

The Board of Special Inquiry in 1941 was still confronted with the question whether they were dealing with a case of arrested development due to disease. They refused to adopt the theory advanced by the applicant's witness and reaffirmed their

610

earlier decision that the applicant had not sustained his burden of establishing the necessary relationship. There was substantial evidence to warrant this conclusion. Indeed, after reading the medical testimony presented at the hearings in 1939 and 1941, if it were necessary for me to do so, I could find that the excluding decision was correct.

The excluding decisions reached in 1939 and in 1941 were appealed to Washington and upheld by the Board of Review.

■ Chin Tin Tuey was given full opportunity to prove his claim of relationship, and there can be no doubt that the hearings were fairly conducted. This being so, and the excluding decision being based upon substantial evidence, this court is without jurisdiction to disturb the action of the immigration authorities.

Petition for a writ is dismissed.